**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **v.** | )   **CR. NO. 04-10232-RWZ** |
| | ) |
| **JAMES MACHADO,** | ) |
| **Defendant.** | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS INFORMATIONS**

Defendant James Machado has moved to dismiss the information
filed against him on August 10, 2004 on two grounds. First, he
claims that his Sixth Amendment speedy trial rights were violated.
warranting dismissal. Next, he argues that the statute of
limitations expired before the government filed the information.
Each of these arguments are meritless and should be rejected by
this Court.

The application of the four-part analysis articulated in
Barker v. Wingo, demonstrates that no speedy trial violation
resulted. 407 U.S. 514, 535 (1972). Defendants, like Machado,
can not avoid a trial and instead "take advantage of the delay in
which he acquiesced, and thereby obtain a dismissal of charges."
United States. v. Trueber, 238 F. 3d 79, 90 (1st Cir. 2001)
quoting Barker v. Wingo, 407 U.S. 514, 535 (1972).

Machado's statute of limitations claim is equally unfounded.
The charges were brought against Machado within the statute of

limitations. It is axiomatic that charges brought within the
general statutory time limit of five years are proper. 18 U.S.C
§ 3282. Moreover, Machado waived his statute of limitations
defense in writing and by pleading guilty to the information.
United States v. Thurston, 358 F. 3d 51, 63, n.10 (1ˢᵗ Cir.
2004) (holding that a defendant may waive his statute of
limitations rights by voluntary agreement, usually in writing or
by pleading guilty).

I.                          **FACTUAL BACKGROUND**[1]

On August 21, 1999, officers from the Warren, Rhode Island
Police Department arrested a subject with twenty pounds of
marijuana in his vehicle. Upon executing a state search warrant
on the subject's house the police located another five pounds of
marijuana. The subject expressed a willingness to cooperate with
law enforcement and the DEA was notified. DEA Task Force Agent
("TFA") Plasse met with the subject and took a statement. The
subject (hereinafter referred to as confidential source or "CS")
stated that on August 20, 1999, the CS called and later met with
Machado in the Job Lot parking lot on Tucker Street in Fall
River, Massachusetts. According to the CS, Machado drove his

---

[1] The facts are obtained from the Drug Enforcement
Administration ("DEA") reports of the incident.

Black Lincoln Mark VIII and delivered twenty pounds of marijuana to the CS at the Job Lot parking lot.

The CS also told TFA Plasse that he had purchased five pounds of marijuana from Machado approximately one month earlier. The CS made another purchase of fifty pounds of marijuana from Machado in Westport, Massachusetts approximately three weeks earlier.

The CS agreed to cooperate and arranged for the purchase of approximately fifty pounds of marijuana from Machado. The Bristol County District Attorney's Crime Prevention and Control ("CPAC") Unit, the South Coast Anti-Crime Team and the DEA's Cape Cod Task Force were contacted to assist on the investigation. The delivery was set for the Holiday Bowling Lanes on State Road in Westport, MA.

On August 21, 1999 between approximately 6:00 p.m., and again at 9:00 p.m., the CS placed a series of consensually recorded telephone calls to Machado under the direction of TFA Plasse and the Warren, RI Police Officers to set up the delivery.

At approximately 9:25 p.m., a white Ford van bearing MA registration 6335 AT was observed entering the Holiday Bowling Lanes parking lot and parking. Machado was the passenger of the van. The officers moved in on the van and apprehended Machado and the operator of the van, Steven Carreiro. A search of the

van revealed approximately fifty pounds of marijuana in three
green plastic bags.

Machado and Carreiro were transported to the Westport, MA
Police Department for booking procedures.  Machado was searched
at booking, and located inside of his prosthetic leg was a drug
ledger.

At approximately 1:00 a.m. on August 22, 1999, Machado was
provided his Miranda rights and agreed to speak with DEA agents.
Machado stated that he had marijuana sources of supply in Texas
and in Chicago, IL.  He explained that the marijuana that he was
arrested with came from a source of supply in Cincinnati, OH.
Machado further stated that he owed the Chicago marijuana source
of supply $50,000 from a prior marijuana shipment.  The Chicago
source of supply paged Machado every day attempting to collect
the money.

The drug weight attributable to Machado in this case is
within the 100 to 400 kilogram range based on the following:

> 50 pounds: seized at arrest;
>
> 25 pounds: information from the CS who stated
> that it previously purchased 25
> pounds of marijuana from Machado
>
> 25 pounds: seized from the CS;
>
> 152 pounds: based upon the projected marijuana
> amounts from assets as follows:

- $50,000 he admitted to owing his Chicago source of supply;
- $5,000 Machado sent to Texas, the subject of forfeiture;
- $21,000 ($10,500 used to buy a Lincoln Mark VIII)

4

     Total of $76,000 in cash represents 152 pounds of marijuana
at $500 per pound.

    The total weight of the marijuana is 252 pounds (or 114
kilograms).

    After his arrest, Machado cooperated with DEA for fifteen
months in a case that resulted in the seizure of 1,200 pounds of
marijuana and the arrest of two individuals, Pedro Aguilar and
Gerardo Cuevas. The cases against both of the defendants were
resolved by guilty pleas. (Exhibit A).

## II.                          **PROCEDURAL HISTORY**

    Machado began cooperating immediately upon his arrest, as
referenced above. On November 27, 1999, a plea agreement was
provided to Machado's attorney, Lance Garth. Attached to the
plea agreement was an information. (Exhibit B). On June 21,
2000, the government received the signed plea agreement from
Machado's attorney. (Exhibit B). Machado expressly waived his
rights under the speedy trial act and statute of limitations in
the plea agreement. (Exhibit B, ¶ 12, final sentence). The
information, plea agreement and a motion to seal was filed by the
government on August 31, 2000 and the matter was assigned to
Tauro, J. (Exhibit C, docket sheet of original case filing).
The motion to seal was filed with the knowledge and consent of
the defendant in an effort to prevent public disclosure of his
continuing cooperation. On April 19, 2001, the government and

5

Machado filed a Joint Motion for a Pre-Plea Pre-sentence report ("PSR"). (Exhibit D). On April 24, 2001, Tauro, J. allowed the parties joint motion and directed the probation department to complete a PSR. (Exhibit C). In the joint motion, Machado indicated that he was aware of the information, wanted to plead guilty to it, and knew that it had been previously filed. (Exhibit D). Machado's cooperation with the DEA ended in or about November 29, 2000 when the cases ended against the two defendants that Machado cooperated against. (Exhibit A, docket sheets of the cases). On August 2, 2001, Machado's attorney withdrew from the case. (Exhibit E, letter from Attorney Lance Garth withdrawing from the case).[2] The government made efforts to have Machado obtain new counsel so the matter could be resolved. (Exhibit F). After April 27, 2004, the government was notified that Daniel W. O'Malley was representing the defendant. (Exhibit F).

The government had numerous conversations with Attorney Daniel O'Malley in which he agreed that the defendant wanted to plead guilty to an information pursuant to an information. (Exhibit F). On August 10, 2004, the government filed another information after it could not locate a copy of the original information in the file and could not locate the case on the

---

[2]     Attorney Lance Garth was compelled to withdraw from representing Machado because he was appointed as a justice of the District Court Department of the Massachusetts Trial Court.

court docket due to the previous sealing of it. (Exhibit F).
The matter was assigned to this court and the case was eventual.y
scheduled for a Change of Plea Hearing on August 16, 2005.
(Exhibit G, docket sheet of this matter). On August 16, 2005,
the defendant plead guilty to the information before this court.
(Exhibit F). The Change of Plea Hearing included, pursuant to
the proper procedure of the court, the execution of a Waiver of
Indictment form in the presence of the court. (Exhibit F). The
defendant has never been in custody on this matter, either post-
arrest or post-plea. (Exhibit F).

## III. THE INFORMATION SHOULD NOT BE DISMISSED BECAUSE THERE WAS NO SIXTH AMENDMENT VIOLATION

The Sixth Amendment to the United States Constitution
provides that "[ i]n all criminal prosecutions, the accused shal
enjoy the right to a speedy and public trial." U.S. CONST.
amend. VI. This right attaches upon arrest or indictment,
whichever occurs first. United States v. Munoz-Amado, 182 F.3d
57, 61 (1st Cir. 1999). Thus, Machado's Sixth Amendment right
attached as of August 21, 1999, when he was arrested.

In Barker v. Wingo, the Supreme Court established a
four-factor balancing test for determining whether a defendant s
Sixth Amendment right to a speedy trial has been violated. 40'
U.S. at 530-533. The four factors are: (1) the length of the
delay; (2) the reason for the delay; (3) the defendant's

7

assertion of his right to a speedy trial; and (4) the prejudice
to the defendant. Id. at 530. No one factor alone is a necessary
or sufficient condition to the finding of a constitutional
deprivation; rather, the four factors "must be considered
together with such other circumstances as may be relevant."
United States v. Munoz-Amado, 182 F.3d 57, 61 (1st Cir. 1999)
quoting United States v. Henson, 945 F.2d 430, 437 (1st Cir.
1991). Although a finding that the Speedy Trial Act ("STA") was
not violated does not preclude a court from finding a
constitutional speedy trial violation, this Court has held that
it would be "an unusual case in which the time limits of the
[STA] have been met but the [S]ixth [ A]mendment right to speedy
trial has been violated." United States v. Mitchell, 723 F.2d
1040, 1049 (1st Cir. 1983) (citation omitted).[3]

Application of Barker's four factors to this case
demonstrates that Machado was not deprived of his constitutional
right to a speedy trial. First, "the length of the delay is both
the trigger for the Barker analysis and one of the factors in
that analysis." United States v. Santiago-Becerril, 130 F.3d 11
22 (1st Cir. 1997); United States v. Doggett, 505 U.S. 647, 652,

---

[3]   The defendant concedes that there was no STA violation in
his Memorandum of Law in Support of his Motion to Dismiss; Facts
and Procedural Background section, page two, hereinafter "Def.
Memo. p.___"). The defendant properly acknowledges this because
he expressly waived his speedy trial act rights in writing in his
plea agreement. See United States v. Bryant, 2005 WL 2406164
(N.D. Iowa) (express waivers in plea agreements are valid).

n.1 (1992)("We note that, as the term is used in the threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry,") (citations omitted). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." Barker, 407 U.S. at 530.

The total delay here, from arrest to plea, was slightly less than five years. The government assumes that the nature of the charges and the length of the delay are sufficient to trigger the Barker analysis. See Doggett v. United States, 505 U.S. 647, 651 n.1 (1992) (noting that lower courts have generally found post-accusation delay requires inquiry at least as the delay approaches one year). Nonetheless, the delay should be not be presumed prejudicial to the defendant, following the First Circuit's lead in Santiago-Becerril, 130 F.3d at 21, and Munoz-Amado, 182 F.3d at 61.

The length of the delay here does not weigh in favor of dismissal, or only very slightly in favor of it. See Barker v. Wingo, 407 U.S. at 533 (delay of more than 5 years was insufficient to warrant dismissal following analysis of other factors); Doggett v. United States, 505 U.S. 647 (1992)(8 years, 6 months delay, no dismissal warranted); United States v. Loud Hawk, 474 U.S. 302 (1986)(7 years, 6 months delay, no dismissal

9

warranted); United States v. Walsh, 300 F.3d 27, 35-36 (1st Cir
2002)(5 years, 8 months delay, no dismissal warranted); Rashad v.
Walsh, 300 F.3d 27 (1st Cir. 2002)(5 years, 8 months delay, no
dismissal warranted); Look v. Amaral, 725 F.2d 4 (1st Cir. 1984:
(4 years, 8 months delay, no dismissal warranted); Rayborn v.
Scully, 858 F.2d 84 (2nd Cir. 1988)(more than 7 years delay, no
dismissal warranted); United States v. Saglimbene, 471 F.2d 16
(2nd Cir. 1972)(6 years delay, no dismissal warranted); United
States v. Dent, 149 F.3d 180 (3rd Cir. 1998)(5 years delay, no
dismissal warranted); State v. Kirsch, 987 P.2d 556 (Or. 1999)(3
years delay, no dismissal warranted); Danks v. Davis, 355 F.3d
1005 (7th Cir. 2004)(6 years, 6 months delay, no dismissal
warranted); Gottlieb v. People, 232 Cal. App. 3d 804, 810
(1991)(delay of ten years was insufficient to support dismissal
after application of Barker analysis).

The second factor, the reasons for the delay, has been
described as "[t]he flag all litigants seek to capture," United
States v. Loud Hawk, 472 U.S. 302, 315(1986). Moreover, it is
"the focal inquiry," with "different weights ... assigned to
different reasons." Munoz-Amado, 182 F.3d at 62 (internal
citations omitted). A "deliberate attempt to delay the trial in
order to hamper the defense" would count heavily against the
government, but "a more neutral reason such as negligence ...
would be weighed "less heavily." Id.

10

Machado argues that the entire delay is attributable to the government and that this factor squarely favors him. This contention plainly ignores the facts of the case. Machado signed a plea agreement with the government that contained a cooperation provision. (Exhibit B, ¶ 6). In it, Machado agreed to waive any rights to prompt sentencing for obvious reasons. He derived more benefit at sentencing from providing more assistance to the government prior to sentencing. (See Exhibit B, ¶ 6 a, c). As such, Machado was responsible for the delay from his arrest on August 21, 1999 to the conclusion of his cooperation on November 29, 2000 because it was in his best interest to do so.

The period of time from August 2, 2001 to mid-2004 is also solely attributable to the defendant. Machado's attorney left the practice of law to become a judge. It took Machado approximately three years to obtain new counsel despite repeated requests by the government to Machado to get counsel. (Exhibit F). Clearly Machado used his lack of counsel to intentionally put off the resolution of the case which would have likely resulted in his incarceration.

The defendant finally retained Attorney Daniel W. O'Malley in mid-2004. (Exhibit F). The defendant not only acquiesced in the delay from that date until he pled guilty on August 16, 2005, he caused it. (Exhibit F). The defendant consistently indicated a willingness to plead guilty under the terms of the plea

11

agreement. Id. A considerable amount of the delay is attributable to the defendant himself, and not the government. At best, there are short periods of delay due to the negligence of the government. This factor is neutral in the Barker balancing test.

The third factor is the defendant's assertion of his speedy trial rights. Machado never indicated his desire to have a speedy trial. Indeed, he continually requested to *plead guilty* and reap the benefits of his cooperation with the government that were spelled out in his plea agreement. A defendant's assertion of his rights is entitled to significant evidentiary weight. Munoz- Amado, 182 F.3d at 62. Alternatively, a defendant that knows of the charges against him and does not assert his rights to a speedy trial will have this factor "weighed heavily against him." United States v. Doggett, 505 U.S. 647, 653 (1992). In holding that Barker was not deprived of his speedy trial rights, the Supreme Court stated:

> But barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant *did not want a speedy trial*.

Barker, 407 U.S. at 536. (Emphasis added). "A defendant should give some indication, prior to his assertion of a speedy trial violation, that he wishes to proceed to trial." Munoz-Amado, 182 F.3d at 89.

12

Machado has never wanted a trial in this matter, let alone a speedy trial. He filed his speedy trial motion complaining for the first time that his rights were infringed more than one month after he plead guilty. (Exhibit G). He admits in his memorandum supporting his motion that he never asserted his speedy trial rights. (Def. Memo. p. 5). Instead, he claims ignorance of the pending information filed on August 31, 2000 because it was sealed. Id. This statement is completely disingenuous. Machado knew of the pending information because a copy of the document was provided to him with the plea agreement on November 27, 1999. (Exhibit B). Additionally, the charges brought by the government in the information were referenced in paragraph one of the plea agreement which reads:

> At the earliest practicable date, Defendant shall plead guilty to all counts in which he is named *in the attached Information*: Count One, conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846; and Count Two, possession of marijuana with intent to distribute, and aiding and abetting, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

(Exhibit B). Machado signed the plea agreement on June 21, 2001 and thereby acknowledged that he read and understood the entire agreement. (Exhibit B, at p. 11). The government filed the plea agreement with the information on August 31, 2001. (Exhibit C).

Machado also demonstrated that he was fully aware of the information by filing a joint motion with the government on April

13

19, 2001. (Exhibit D). In the motion, Machado sought the preparation of a pre-plea PSR in contemplation of his pending plea of guilty to the information. (Exhibit D). Machado directly addressed the pending charges in paragraph number one:

> Pursuant to a cooperation plea agreement, Machado intends to plead guilty to an Information in this action, charging him with conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §846. A copy of the plea agreement and Information have been filed previously.

(Exhibit D). Machado knew about the pending information. Additionally, there is no conceivable reason for Machado to file a joint motion for a PSR unless he knew that he was charged with a crime, and intended to resolve it by a plea of guilty. Indeed the Federal Rules of Criminal Procedure authorize the preparation of PSR's with "defendants" . See Fed. R. Crim. Proc. 32 (using "defendant" nine times when discussing the PSR procedure, thereby indicating that the PSR process is only available post-charging). Moreover, Judge Tauro allowed the parties request five days later, on April 24, 2001 validating the existence of the information on file, and imminent guilty plea. (Exhibit C).

A defendant not desiring a trial is more important than the lack of prejudice to the defendant resulting from the delay. Barker, 407 U.S. at 535. Further, a defendant's acquiescence extenuates the prejudice factor. United States v. Doggett, 505 U.S. 647, 658 (1992). Here, Machado knew of the charges against

14

him and chose to do nothing.  This inaction by the defendant does not weigh in his favor on the assertion of his rights factor in the Barker analysis.  United States v. Trueber, 238 F. 3d 79, 89 (1ˢᵗ Cir. 2001).  In Trueber, the First Circuit faulted the defendant for nine months of inaction in expediting his trial. Id.  The court reasoned that "Trueber only became interested in invoking the Sixth Amendment when it became an avenue to dismiss the indictment or obtain release."  Id. at 90.  The court held that the defendant "hoped to take advantage of the delay in which he acquiesced, and thereby obtain a dismissal of the charges." Id., quoting Barker, 407 U.S. at 535.

Machado, like the defendants in Truber and Barker, only raised an allegation of a violation when it appeared that he may gain an advantage.  Machado's conduct demonstrates that the assertion of his rights factor in the Barker inquiry weighs so heavily against him that a speedy trial dismissal is unwarranted.

The final factor, prejudice to the defendant, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."  Barker, 407 U.S. at 532.  The Supreme Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize the defendant's anxiety and concern; and (iii) to limit the possibility that the defense will be impaired.  Id. at 532. The last of these is the most serious, as it goes to the fairness

15

of the entire system. Id. at 532; See Munoz-Amado, 182 F.3d at 63 (defining this interest as the "paramount interest").

The first two interests are inapplicable to this matter. Machado has never been incarcerated and he claims no anxiety from the delay. (See Def. Memo.). Machado does complain that he has been suffered actual prejudice by being precluded from "mounting any sort of effective defense." (Def. Memo. p. 6). However, he has not presented any evidence to support his bald assertion suc as the pretrial delay interfered with his ability to present evidence or obtain the testimony of witnesses. This generalized assertion is unpersuasive as a defendant must specifically identify how his defense was compromised by the delay. See Rashad v. Walsh, 300 F. 3d 27, 42 (1st Cir. 2002) (more than vague allegations of missing witnesses and dimmed memories is required to establish claim of prejudice, corroboration is necessary).

The defendant relies upon the presumption of prejudice to establish this factor. (See Def. Memo.). This reliance is misplaced. The presumption of prejudice is insufficient alone to support a Sixth Amendment claim. Doggett, 505 U.S. at 655-656. The presumption of prejudice is neither automatic or inexorable and may be inapplicable even with a substantial delay. Id. (presumption unavailing where the defendant took no action during five year delay) citing Doggett, 505 U.S. at 655-56.

16

The defendant points to United States v. Leaver, 358 F. Supp. 2d 255 (S.D.N.Y. 2004) to bolster his presumption position. Leaver bears no resemblance to this matter. In Leaver, unlike here, the defendant identified distinct disadvantages to his defense resulting from the delay including the death of several key witnesses. 358 F. Supp. 2d at 272-73. The court also noted that even given the strong presumption of prejudice demonstrated by the defendant, the presumption was rebuttable by the government. Id.

Machado suffered no prejudice from the delay, and instead benefitted from the time due to his continuing cooperation in hopes of a reduced sentencing recommendation by the government. See Barker, 407 U.S. at 532-33 (ten months pre-trial incarceration, and loss of memory of witnesses after a five year delay is considered only a minimal prejudice under the circumstances). There is no prejudice for the government to rebut since the defendant has identified no prejudice that he suffered. This factor also tips in favor of the government in the Barker analysis.

The application of Barker's balancing test establishes that Machado's constitutional right to a speedy trial was not violated. See Munoz-Amado, 182 F.3d at 63; Santiago-Becerril, 130 F.3d at 23. The court should reject his motion to dismiss on these grounds.

17

IV.     **THE INFORMATION SHOULD NOT BE DISMISSED BECAUSE
        THERE WAS NO STATUTE OF LIMITATIONS VIOLATION**

1.      The charges were brought within the time limits of
        the statute of limitations.

The statute of limitations for the crimes of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846; and possession of marijuana with intent to distribute and aiding and abetting, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 that are charged in the information is the general five year provisions of 18 U.S.C. § 3282. Machado was arrested on August 21, 1999. Accordingly, the five year statute of limitations expired on August 20, 2004.[4] Charges brought outside of the period of the statute are time-barred. See 18 U.S.C. § 3282.

Machado claims that a technical violation occurred resulting in a faulty filing of the information in this matter. He argues that therefore the information was never properly filed and the five year statute of limitations expired on August 20, 2004. This argument ignores the practice of the court in compliance with Federal Rules of Criminal Procedure and established

---

[4]     This expiration date of the statute of limitations is without the discussion of the tolling of the statute of limitations during the course of the defendant's cooperation with the government, primarily because the charges were brought well within the statute of limitations anyway.

18

precedent. The waiver of indictment is required to be executed
with the assistance of the court at the change of plea hearing.
Rule 7 of the Fed. R. Crim. P. provides:

> An offense punishable by imprisonment for more than one
> year mat be prosecuted by information if the defendant
> ...*in open court* and after being advised of the nature
> of the charge and of the defendant's rights...waives
> prosecution by indictment.

This court followed this mandated procedure at Machado's change
of plea hearing on August 16, 2005. (Exhibit F). Clearly the
court utilized a time tested, valid procedure authorized by the
Federal Rules of Criminal Procedure, see Fed. R. Crim. P. 7, and
the filing of the waiver of indictment with the information
suggested by the defendant would have been inappropriate.

No violation of the statute of limitations occurred here.
The government, mindful of the statute of limitations and with
its eye on the deadline imposed, filed the information with this
court on August 10, 2004 - ten days *before* the expiration of the
time period.[5] The defendant's claim fails based upon a careful
review of the sequence of events and the time limits.

---

[5] The information pending before Tauro, J. was also filed well
within the statute of limitations. It was filed on August 31,
2000 - just over one year after the defendant's arrest on August
21, 1999 and nearly four years before the expiration of the time
period.

19

2.    The defendant validly waived his statute of

limitations protections in writing.

It is well settled that a defendant may waive his rights

afforded under the statute of limitations. United States v.

Thurston, 358 F. 3d 51, 63, n.10 (1ˢᵗ Cir. 2004);   United States

v. Spector, 55 F. 3d 22 (1ˢᵗ Cir. 1994) (statute of limitations

can be expressly waived before trial in a written agreement).

Every circuit that has considered this issue has decided that he

statute of limitations is a waivable affirmative defense, and not

a jurisdictional bar. Id. at 307 (internal citations omitted);

United States v. Najjar, 283 F. 3d 1306, 1308-09 (11ᵗʰ Cir. 2002)

In Najjar, the Eleventh Circuit upheld the defendant's waiver in

a plea agreement permitting a plea of guilty to an information

stating :

Although we have not more recently had occasion to
address this issue, every other circuit to have
considered it has likewise concluded that the
expiration of the statute of limitations...constitutes
an affirmative defense, which the defendant can waive.

283 F. 3d at 1308-09 (internal citations omitted).   The Supreme

Court seems to agree stating "The statute of limitations is a

defense that must be asserted at trial by the defendant in

criminal cases..." Biddinger v. Commissioner of Police, 245 U.S.

128, 135 (1917).

20

Machado expressly waived his statute of limitations rights under the terms of the written plea agreement that he executed or June 21, 2000. (Exhibit B). Specifically, paragraph twelve, titled Breech of Agreement, page nine of the document states: "In this regard, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations on the Speedy Trial Act." Id. Later, the defendant acknowledged that he was entering into the agreement knowingly and voluntarily: "I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this agreement is in my best interest." Id. at Acknowledge of Plea Agreement section, page eleven.

The First Circuit has agreed that the filing of a waiver of indictment is unnecessary to perfect the "instituting" of the information for tolling of the statute of limitations. United States v. Burdix-Dana, 149 F. 3d 741, 743 (7th Cir. 1998). In Burdix-Dana, the court considered the precise issue of whether the filing of a waiver of indictment with the information was required to toll the statute of limitations. Id. The court rejected the defendant's claim that Fed. R. Crim. P. 7(b) mandated the filing of a waiver of indictment with the

21

information explaining that the rule dealt with *prosecution* and not with institution of charges. Id. at 742-43. Simply stated, a waiver of indictment is required before a guilty plea or trial on an information, but has absolutely no relevance to instituting the information, which is met by filing it. See Id.; accord United States v. Thompson, 287 F. 3d 1244 (10ᵗʰ Cir. 2002); United States v. Hsin-Yung, 97 F. Supp. 2d 24, 28 (D.C. 1998).

Confronted with this legal roadblock, the defendant again feigns ignorance of the existence of the information in an apparent effort to distinguish Burdix-Dana. Machado returns to the unpersuasive point that he had no notice of the sealed information. (Def. Memo. p. 9). As detailed above, but reiterated here for emphasis, the defendant had actual knowledge of the information because it was *attached to and referenced within the plea agreement* that he signed. Further, he filed a joint motion with the court seeking a pre-plea PSR with only one possible aim - to plead guilty pursuant to the terms of the plea agreement that he cooperated under, and bargained for with the government. In the joint motion, Machado indicated that he knew of the pending information, and knew that it had been filed with the court previously. (Exhibit D, ¶ 1). Machado was obviously aware of the information, and desperately wanted to, eventually

22

did plead guilty to the charges contained in it. His cries of unfair surprise of the existence of the information should fall upon deaf ears.

Machado properly waived his statute of limitations rights when he entered into the plea agreement. See United States v. Thurston, 358 F. 3d 51, 63 (1st Cir. 2004).

> 3.  The defendant validly waived his statute of limitations protections by pleading guilty before this court.

A defendant also waives his statute of limitations defense by pleading guilty to the offense. Acevedo-Ramos v. United States, 961 F. 2d 305, 308-309 (1st Cir. 1992). The waiver during the course of the change of plea hearing does not necessarily need to be express. Id. However, the "better practice" is to specifically waive all possible defenses in a written document. Id. at 308.

Machado plead guilty before this court on August 16, 2005. By doing so, he waived his defense under the statute of limitations. See Acevedo-Ramos v. United States, 961 F. 2d 305 (1st Cir. 1992). The defendant mentions in passing that the in court waiver of indictment on August 16, 2005 may not have been

knowing, and was thereby invalid. (Def. Memo. p. 10, n.3)
However, he offers no support in the record and no applicable
authority to sustain this claim. Acevedo-Ramos ruled squarely on
this very issue stating, "Thus, like other affirmative defenses,
the statute of limitations is deemed waived when a defendant
pleads guilty even if the defendant did not make a knowing and
express waiver of the defense." 961 F. 2d at 308-309.

The defendant's plea of guilty before this court operated t
extinguish his statute of limitations defense.[6]

---

[6] The defendant's Speedy Trial Act defense was also waived
when he pled guilty. See United States v. Gonzalez-Airmont, 268
F. 3d 8, 12 (1st Cir. 2001) (holding that in accordance with
other circuits, a guilty plea waives Speedy Trial Act claims
because they are defenses and not jurisdictional in nature.)

V.                        **CONCLUSION**

    For all of the foregoing reasons, the Court should deny

defendant's Motion to Dismiss Informations.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

GLENN A. MACKINLAY
Assistant U.S. Attorney
(617) 748-3215

DATED: October 11, 2005

**CERTIFICATE OF SERVICE**

A copy of the foregoing was this day sent by first class mail, postage prepaid, to Daniel W. O'Malley, counsel for James Machado.

Dated: October 11, 2005

GLENN A. MACKINLAY
Assistant U.S. Attorney

26