UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | CR. NO. 04-10232-RWZ |
| ) | |
| **JAMES MACHADO,** ) | |
|       **Defendant.** ) | |

**GOVERNMENT'S MOTION FOR RECONSIDERATION
OF COURT ORDER GRANTING THE DEFENDANT'S
MOTION TO DISMISS INFORMATION**

**I.   BACKGROUND**

The defendant, James Machado ("Machado") filed a motion to dismiss the information in this matter.  The government timely filed an opposition on October 11, 2005.  In its opposition, the government offered no explanation for the length of the delay in its discussion of the speedy trial analysis articulated in Barker v. Wingo, 407 U.S. 514, 535 (1972).  Instead, the government directed the court to Machado's obvious acquiescence in the delay that was beneficial to him due to his expectation of a lenient sentence recommendation.

On November 3, 2005, the court issued its memorandum of decision and order granting the defendant's motion to dismiss. (Memorandum of Decision and Order, Nov. 3, 2005, hereinafter "Order at p.___").  The court relied heavily upon the absence of governmental explanation of the reason for the delay stating that the government had no "satisfactory reason for the length of the

1

delay in prosecuting this case." (Order at p. 9). The court held that the "excessive length of the delay and the fact that it was occasioned by official negligence outweigh the fact that defendant failed to assert his right to a speedy trial." (Order at p. 11). Additionally, the court based its decision under Rule 48(b) of the Federal Rules of Criminal Procedure on its belief that the government had "no satisfactory explanation for the long hiatus in its prosecution of defendant." (Order at p. 12).

The government moves this court for reconsideration of the November 3, 2005 court order dismissing the 2004 information in this case based upon the newly available evidence. Specifically, the government is now permitted to relate to the court that Machado was being actively investigated since October, 2003, and was engaged in drug trafficking activities throughout the pendency of this case. (See Affidavit of Special Agent Jennifer Fallon of the Drug Enforcement Administration ("DEA") attached as Exhibit A). A motion for reconsideration may be properly brought where evidence that was not previously available to the court becomes available. See, e.g., United States v. Rich, 343 F. Supp. 2d 411, 414 (E.D. Penn. 2004).

   1.   **The Reason For the Delay**

A significant portion of the delay in this case was due to a legitimate reason -- there was an ongoing criminal investigation involving a confidential informant that was focusing on the

continuing criminal activity of Machado and others closely connected to him. (See Affidavit of Detective Daniel R. Sullivan of the Westport Police Department in support of the issuance of a search warrant for Machado's residence, and arrest report hereinafter "Sullivan Aff. at p. ___", attached as Exhibit B). The government was unable to disclose this investigation previously because Machado and his associates would have been tipped off compromising the ongoing investigation.  Moreover, public disclosure would have jeopardized the safety of the confidential informant and investigators. (Sullivan Aff. at p. 1) (indicating that the confidential informant feared that if identified, physical harm would result).

The newly available evidence consists of the fact that there was an ongoing investigation into Machado from October, 2003 to November 4, 2005. (Exhibit A at ¶ 5).  During the course of the investigation, the defendant's residence was frequently surveilled by law enforcement authorities. (Exhibit B at p. 5-9). The confidential informant aided the investigation by making at least six controlled purchases of marijuana from the defendant or his associates between November, 2004 and November, 2005. (Exhibit B at p. 4-9).  Additional suspects were also identified and investigated. (Exhibit B at p. 2-7).  Information about this criminal investigation was only made available to the government for public use after the search warrant was executed on Friday,

November 4, 2005 due to the fear of disrupting the investigation or raising safety concerns.

The search warrant execution resulted in the following:

(1) Machado's arrest on state charges of Possession of a Controlled Substance, Marijuana, with Intent to Distribute;

(2) the seizure of drugs including marijuana, Alprazolam, Percocets, Steroids, and Clonazepam;

(3) the seizure of drug paraphernalia, including a scale;

(4) the seizure of a stun gun; and

(5) the seizure of a drug ledger containing records of drug sales between September, 1999 and May, 2002.
(Exhibit B at p. 8-9; and Drug Ledgers, attached as Exhibit C).

The evidence of the ongoing investigation clearly demonstrates that the government had a valid reason for a significant portion of the delay in this case.  The delay was not as a result of negligence, as noted by the court, but was in fact the result of the government's ongoing efforts to investigate criminal activity.

Conducting a criminal investigation is a legitimate reason for delaying a criminal proceeding.  See, e.g., Flowers v. Warden, 677 F.Supp. 1275, 1279 (D.Conn 1988).  In Flowers, the court listed reasons a "trial might legitimately be delayed" including "conducting investigations" or locating witnesses and

4

noted that a "valid reason, such as a missing witness, should serve to justify appropriate delay."  This same principle was recognized by the Seventh Circuit who held that the existence of an ongoing investigation justified a delay in criminal proceedings because disclosure of the investigation could adversely affect the investigation and jeopardize the "safety of law of law-enforcement agents."  United States v. Cowsen, 530 F.2d 734, 737 (7th Cir. 1976).  Similarly, in Lyons v. United States, 683 A.2d 1080, 1085 (D.C. 1996), the court called investigative delay "fundamentally unlike" other types of delay because failing to delay a proceeding could impair the "ability to continue the investigation or obtain additional indictments."  The delay due to an ongoing investigation of a criminal conspiracy has even been termed "noble" and weighed heavily in the speedy trial analysis in favor of the government.  United States v. Frith, 181 F.3d 92 (Table **3), (4th Cir. 1999) (unpublished).

   The ongoing criminal investigation of the defendant and his associates was a legitimate reason for a significant portion of the delay -- October, 2003 to present.  The court should reconsider its decision to allow the defendant's motion resting upon these grounds.

### 2. The Lack of Prejudice to the Defendant

   The prejudice factor in the Barker test also merits re-

examination.  The prejudice to the defendant, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."  <u>Barker</u>, 407 U.S. at 532. The Supreme Court has identified three such interests: (I) to prevent oppressive pretrial incarceration; (ii) to minimize the defendant's anxiety and concern; and (iii) to limit the possibility that the defense will be impaired.  <u>Id</u>. at 532.  The last of these is the most serious, as it goes to the fairness of the entire system.  <u>Id</u>. at 532; <u>See</u> <u>Munoz-Amado</u>, 182 F.3d at 63.

The government indicated in its brief that the defendant claimed no prejudice resulting from the second interest, the defendant's anxiety and concern. (<u>See</u> Government's Opposition to Defendant's Motion to Dismiss, and Defendant's Memorandum in Support of Motion to Dismiss).  Nevertheless, the court found "[t]here can be little doubt that the threat of prosecution and future incarceration is normally a matter of considerable anxiety and concern." (<u>See</u> Order at p. 11).

The newly available evidence, including the recovery of drug ledgers belie the court's concern.  The drug ledgers prove that Machado was a brazen drug dealer that resumed selling marijuana just one month after he was arrested on serious federal charges, and sold drugs consistently in the years that followed. <u>See</u> <u>Id</u>. Machado maintained the drug ledgers, or "crib sheets", that reflected an accounting of the state of his drug dealing

6

business. (Exhibit C, ¶ 8-9). Drug ledgers are used by drug traffickers to keep track of payments received for drug deliveries and also the drugs sold to customers. Id. Machado's drug ledgers establish that he sold large amounts of marijuana to multiple customers and received regular payments against the balance that they owed. Id. For example, Machado sold one pound quantities of marijuana to Turk LNU for $1,500 in U.S. currency on at least twenty-five occasions. Id. at ¶ 9. Additionally, the drug ledgers demonstrates that Machado had another customer, Steve LNU to whom he sold quantities of marijuana totaling $62,778. Id. at ¶ 9.

The courts finding that Machado suffered from the anxiety of the pending prosecution on this matter is misplaced in light of by the defendant's conduct in trafficking in narcotics. Machado continued to violate federal drug laws despite frequent contact with DEA agents while cooperating and charges pending in this court. Certainly he suffered under no strain from these charges.

Machado is also no stranger to the criminal justice system. As such, he was not likely to experience any meaningful concern from this arrest, particularly where he was cooperating with the government. Specifically, Machado's criminal history includes convictions for Armed Robbery with a firearm, and Burglary in which he was convicted and sentenced to a lengthy state prison sentence. (Exhibit B at p. 3). He also has two prior convictions

for Assault and Battery and numerous other arrests for violent crimes that establish that he was a veteran of the system. Machado's familiarity with the court and prison system establishes that he was highly unlikely to even wince at the prospect of the charges in this case. See Id.

Likewise, the courts unsupported assertion that Machado's "[a]bility to mount an effective defense was surely prejudiced by the delay" is unavailing. (See Order at p. 11).  This generalized assertion is insufficient as a defendant must specifically identify how his defense was compromised by the delay.  See Rashad v. Walsh, 300 F. 3d 27, 42 (1st Cir. 2002) (more than vague allegations of missing witnesses and dimmed memories is required to establish claim of prejudice, corroboration is necessary).

Machado suffered no prejudice from the delay, and instead benefitted from the time due to his continuing cooperation in hopes of a reduced sentencing recommendation by the government. See Barker, 407 U.S. at 532-33 (ten months pre-trial incarceration, and loss of memory of witnesses after a five year delay is considered only a minimal prejudice under the circumstances).  The court erred in finding that this factor does not tip in favor of the government in the Barker analysis.

The application of Barker's balancing test establishes that Machado's constitutional right to a speedy trial was not violated.  See Munoz-Amado, 182 F.3d at 63; Santiago-Becerril,

8

130 F.3d at 23.  The court should reject his motion to dismiss on these grounds.

Since the execution of the search warrant and arrest of Machado were recently made, the evidence of the investigation is now available to the government to present to this court.  The evidence compels the court to reconsider its order granting the defendant's motion to dismiss.

## II.  CONCLUSION

For all of the foregoing reasons, the Court should reconsider its grant of the Defendant's Motion to Dismiss Information.

>                    Respectfully submitted,
>
>                    MICHAEL J. SULLIVAN
>                    United States Attorney
>
>
>              By:   s/ Glenn A. MacKinlay
>                    GLENN A. MACKINLAY
>                    Assistant U.S. Attorney

DATED: November 9, 2005

**CERTIFICATE OF SERVICE**

    A copy of the foregoing was this day sent by first class mail, postage prepaid, to Daniel W. O'Malley, counsel for James Machado.

| | |
|---|---|
| Dated: November 9, 2005 | s/ Glenn A. MacKinlay<br>GLENN A. MACKINLAY<br>Assistant U.S. Attorney |